UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DAMARCO ANTONIO SMITH,

            Petitioner,

v.                                              Civil No. 2:23cv73
                                                Criminal No. 2:21cr83

UNITED STATES OF AMERICA,

            Respondent.


## OPINION AND ORDER

This matter is before the Court on Damarco Antonio Smith's ("Petitioner") pro se amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 111. For the reasons explained below, Petitioner's amended § 2255 motion is **DENIED in part and TAKEN UNDER ADVISEMENT in part** pending an evidentiary hearing. Moreover, Petitioner's original § 2255 motion, ECF No. 84, is **DISMISSED as moot**.

## I. FACTUAL BACKGROUND

Between 2018 and 2020, Petitioner, alongside other co-conspirators, took part in a scheme to defraud financial institutions. Based on Petitioner's role in this criminal venture, law enforcement launched an investigation into Petitioner for stealing checks and identity documents, as well as for unlawfully possessing firearms. ECF No. 1; ECF No. 37 ¶¶ 2-3, 6-9.

On September 2, 2021, a grand jury returned a 23-count superseding indictment charging Petitioner with ten counts associated with the bank fraud conspiracy and thirteen counts associated with firearms and firearm purchases. ECF No. 24. Thereafter, Petitioner agreed to waive indictment and plead guilty to a three-count criminal information charging: (1) Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1),(c)(5); (2) Conspiracy to Commit Credit Union Fraud, in violation of 18 U.S.C. § 1334; and (3) Possession of a Firearm by an Unlawful User of Controlled Substances, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). ECF Nos. 31, 35, 36.

Leading up to Petitioner's sentencing, the probation officer prepared a presentence investigation report ("PSR") in which the probation officer calculated a total offense level of 27. ECF No. 45, at 19. This calculation consisted of a base offense level of 20 under Count 3[1]; a 4-level enhancement because the offense involved multiple-firearms (8-24 firearms); a 2-level enhancement because at least one firearm was stolen; a 4-level enhancement based on the use/possession of a firearm or ammunition in connection with another felony; and a 3-level credit for acceptance of responsibility. Id. Petitioner's Criminal History was determined to be a Category IV, and the resulting Guideline range

---

[1] When a defendant has been convicted of multiple counts, "[t]he combined offense level is determined by taking the offense level applicable to the Group with the highest offense level." U.S.S.G. § 3D1.4.

was 100 to 125 months, plus 24 months consecutive on the aggravated identity theft count. ECF No. 45, at 33.[2]  On March 4, 2022, the Court sentenced Petitioner to 124 months' imprisonment (100 + 24),[3] ECF No. 56, at 2, and the Government dismissed the superseding indictment, ECF No. 53, at 4.

On August 11, 2023, Petitioner filed his original § 2255 motion advancing four grounds for relief based on his lawyer's ineffective assistance during plea negotiations and sentencing proceedings.  ECF No. 84.  After the Court granted two briefing extensions, the Government filed a brief in opposition on June 14, 2024.  ECF No. 110.  On June 17, 2024, Petitioner filed an amended § 2255 motion advancing six different grounds for relief, five arguing that his lawyer provided constitutionally ineffective assistance and one contending that 18 U.S.C. § 922(g)(3) is unconstitutional.  ECF No. 111.[4]  The Government filed a response to Petitioner's amended § 2255 motion on July 25, 2024, ECF No. 116, and after the Court granted two briefing extensions, Petitioner filed his reply brief on November 1, 2024, ECF No. 121.

_____

[2] Petitioner's conviction for aggravated identity theft also carried a mandatory consecutive term of imprisonment of 24 months.  ECF No. 45, at 33; 18 U.S.C. § 1028A(a)(1), (b)(2).

[3] Petitioner's sentence was later reduced to 111 months' imprisonment.  ECF No. 108.

[4] Petitioner's amended § 2255 motion superseded and replaced the original petition submitted by Petitioner.  Therefore, Petitioner's original § 2255 motion, ECF No. 84, is **DISMISSED as moot.**

3

For the reasons explained below, Petitioner's amended § 2255 motion is **DENIED** as to all claims except his ineffective assistance of counsel claim alleging failure to file a notice of appeal and his direct challenge to the constitutionality of § 922(g)(3). Those claims are **TAKEN UNDER ADVISEMENT** pending an evidentiary hearing.

## II. STANDARD OF REVIEW

A federal prisoner in custody may collaterally attack his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner must prove by a preponderance of the evidence that: (1) his sentence or conviction was "imposed in violation of the Constitution or laws of the United States"; (2) the district court "was without jurisdiction to impose such sentence"; (3) the sentence exceeds "the maximum authorized by law"; or (4) the sentence or conviction is "otherwise subject to collateral attack." Id. A § 2255 motion is, in essence, a statutory federal habeas corpus action that collaterally attacks a sentence or conviction through the filing of a new proceeding, in contrast to a direct appeal. Jones v. Zych, 812 F. App'x 115, 119 (4th Cir. 2020).

The right to pursue a collateral attack does not displace a direct appeal as the ordinary method for challenging a conviction or sentencing determination, so the doctrine of procedural default

generally prevents a district court from reaching the merits of § 2255 claims that were not raised on direct appeal. United States v. McKinney, 60 F.4th 188, 193 (4th Cir. 2023). Accordingly, with limited exceptions, a petitioner advancing claims asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). The "higher hurdle" applies because, once a petitioner's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands respect." Id. at 165-66.

For this reason, a district court is generally prevented from reaching the merits of a defaulted § 2255 claim unless a petitioner can show two things: (1) "cause" excusing the failure to directly appeal the alleged errors; and (2) "actual prejudice resulting from the errors." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999). Alternatively, a petitioner may overcome default by demonstrating "actual innocence by clear and convincing evidence." Id. at 493.

The above procedural default rules do not apply to freestanding claims alleging ineffective assistance of counsel. Rather, ineffective assistance claims are properly asserted for the first time in a § 2255 motion. Massaro v. United States, 538 U.S. 500, 504 (2003). To obtain relief based on an allegation of ineffective assistance, a petitioner must establish both: (1) that

5

counsel's performance was so deficient that it "fell below an objective standard of reasonableness"; and (2) that counsel's inadequate performance prejudiced the petitioner. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Conclusory statements are insufficient to carry a petitioner's burden to demonstrate ineffective assistance. See United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." (quoting United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000))).

When evaluating counsel's performance under the first prong of Strickland, courts "must be highly deferential." Strickland, 466 U.S. at 689; see also Kimmelman v. Morrison, 477 U.S. 365, 381-82 (1986) (discussing the "highly demanding" Strickland standard). Satisfying the first prong of Strickland requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Reviewing courts strongly presume that counsel exercised reasonable professional judgment, and only in "relatively rare situations" will a § 2255 motion establish that, "'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" Tice v. Johnson, 647 F.3d 87, 102 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 690). As

it is too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

Under the second prong of Strickland, a petitioner must "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Court applies a slightly modified prejudice standard when a petitioner alleges ineffective assistance associated with the entry of a guilty plea, requiring the petitioner to demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). If a petitioner fails to prove either prong of the Strickland test such failure is fatal to their § 2255 claim. Moore v. Hardee, 723 F.3d 488, 500 (4th Cir. 2013).

### III. DISCUSSION

### A. Failure to File Notice of Appeal

Petitioner's first ineffective assistance claim asserts that he directed his lawyer to file an appeal, but that counsel failed to do so. ECF No. 111, at 5-6. It is well-established that "an attorney renders constitutionally ineffective assistance of counsel if [s]he fails to follow h[er] client's unequivocal instruction to file a timely notice of appeal" even if the defendant waived his right to appeal. United States v. Poindexter, 492 F.3d 263, 265 (4th Cir. 2007). Where a petitioner provides sworn evidence that he timely directed his counsel to file a notice of appeal and counsel files an affidavit denying such claim, an evidentiary hearing is typically necessary to determine the credibility of the conflicting sworn accounts. See United States v. Diaz, 547 F. App'x 303, 304 (4th Cir. 2013) (finding that the district court abused its discretion by failing to conduct an evidentiary hearing when there were conflicting sworn statements about whether the petitioner directed his counsel to file an appeal).

Here, Petitioner states under oath that he asked his lawyer to file a notice of appeal immediately after his sentencing hearing on March 3, 2022. ECF No. 111, at 37. Further, Petitioner contends that between March 3, 2022 and October 21, 2022, he "repeatedly wrote to [counsel] and attempted to call her regarding [his]

8

appeal." Id. at 38. In contrast, counsel's sworn statements do not reference a conversation with Petitioner immediately after his sentencing hearing. ECF No. 110-1. Instead, counsel attests under oath that she met with Petitioner on March 8, 2022, and that he declined counsel's offer to note an appeal on his behalf. Id. at 1. Counsel also explains that she has no other "record of contact from [Petitioner] until September 28, 2022." Id. at 2. The § 2255 record therefore reveals a potentially dispositive factual dispute that appears to turn on the credibility of the witnesses providing the sworn statements.

Based on the existence of conflicting sworn statements, and in the absence of any other record evidence that could independently demonstrate which version of events occurred, the Court finds that an evidentiary hearing is necessary. See Diaz, 547 F. App'x at 304 ("[W]e long ago recognized that there remains 'a category of petitions, usually involving credibility, that will require an evidentiary hearing in open court.'" (quoting Raines v. United States, 423 F.2d 526, 530 (4th Cir. 1970))). This claim is therefore **TAKEN UNDER ADVISEMENT**.

## B. Failure to Explain the Elements of the Offense Charged in Count 3

Petitioner next claims that counsel was ineffective because she failed to review with Petitioner the elements of the offense charged in Count 3 and explain the Government's burden of proof.

ECF No. 111, at 7-9. This claim focuses on defense counsel's purported failure to inform Petitioner that "the government would have to prove beyond a reasonable doubt" that Petitioner was a marijuana abuser or addict "on 3/13/20 and 3/20/2020." Id. In short, Petitioner contends that, had counsel explained these elements and the Government's burden, he would not have pled guilty and would have instead proceeded to trial. Id.

Petitioner's § 2255 assertions, however, directly contradict the sworn statements that he made during his Rule 11 guilty plea colloquy. There, Petitioner affirmed under oath that he: (1) had fully discussed the charges in the criminal information and the case with his attorney; (2) understood the charges against him; (3) understood each element of count 3 and the Government's burden to prove each element beyond a reasonable doubt; and (4) was satisfied that his attorney had considered all facts discussed with him and any possible defenses that he may have. ECF No. 66, at 5, 10, 11, 19. As the Fourth Circuit has repeatedly held, Petitioner's contrary § 2255 allegations are insufficient to refute his prior sworn statements to the Court. See United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005) (indicating that, absent "extraordinary circumstances," allegations in a § 2255 motion "that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false'"); see

also Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.").

The Government also provides contemporary evidence that refutes Petitioner's § 2255 allegations that defense counsel did not inform him of the elements that the Government had to prove under Count 3 or the Government's burden of proof. Specifically, a letter from defense counsel dated October 12, 2021, advises Petitioner that: "The first [§ 922(g)(3)] element the government must prove beyond a reasonable doubt is that at the time of the alleged offense, defendant was an addict or unlawful user of controlled substances." ECF No. 110-3, at 5 (emphasis added). Moreover, defense counsel's 2021 letter separately highlights the fact that the Government had the burden of proving "each and every element of each and every charge beyond a reasonable doubt." Id. at 3. Petitioner signed this document — roughly two weeks before he entered his guilty plea — certifying that he had "received and discussed the contents of this letter with [his] attorney." Id. at 15. Therefore, Petitioner plainly fails to demonstrate that counsel committed any errors during his plea negotiations that constituted defective performance under Strickland's first prong. Strickland, 466 U.S. at 687. Accordingly, Petitioner's second ineffective assistance claim is **DENIED.**

## C. Failure to Object to Count 2 Enhancements

Petitioner next asserts that his counsel performed deficiently by failing to object to the following Guideline enhancements applicable to Count 2: (1) an eight-level enhancement based on a loss exceeding $95,000; and (2) a two-level enhancement based on Petitioner's possession of a firearm in connection with the offense. ECF No. 111, at 11-13.

First, Petitioner argues that his former counsel should have objected to the eight-level enhancement (loss over $95,000) because the "actual loss" attributed to Petitioner was only $46,532. Id.; see U.S.S.G. § 2B1.1(b)(1). However, when "calculating the amount of loss for the purpose of the § 2B1.1(b)(1) enhancement, a district court may consider 'the greater of actual loss or intended loss.'" United States v. Otuya, 720 F.3d 183, 191 (4th Cir. 2013) (quoting U.S.S.G. § 2B1.1, App. n.3(A),(C)[5]). Here, Petitioner was attributed with an intended loss of $131,054.42, ECF No. 45, at 16, which far exceeds the $95,000 threshold. Therefore, Petitioner's claim that counsel was constitutionally deficient for failing to challenge the loss calculation fails.

[5] Recent amendments to the Guidelines have only strengthened this rule, as loss is now defined in the text of § 2B1.1(b)(1)(A) rather than in the Application Notes. U.S. Sent'g Guidelines Manual amend. 827 (U.S. Sent'g Comm'n 2024).

12

Second, Petitioner contends that defense counsel was ineffective because she did not object to the two-level enhancement based on Petitioner's possession of a dangerous weapon in connection with the fraud offense. ECF No. 111, at 11. This enhancement applies if a defendant's possession of the firearm facilitates the commission of another offense by protecting or emboldening the defendant. United States v. McKenzie-Gude, 671 F.3d 452, 463-64 (4th Cir. 2011). Here, the written Statement of Facts, which Petitioner swore was true at the time of his plea, supports the enhancement as it includes facts linking firearms to the fraud conspiracy. ECF No. 37 ¶¶ 7-9. Petitioner's claim that counsel was constitutionally deficient for failing to challenge this enhancement is therefore undercut by his own stipulations.

Turning to the prejudice prong, even if counsel had committed error handling the 8-level and/or 2-level enhancements applied to Count 2, Petitioner fails to demonstrate Strickland prejudice because his total offense level and Guideline range was based entirely on Count 3, not Count 2. To calculate the combined offense level in a case with multiple counts, the Court must use the highest adjusted offense level of any of the "groups" of the defendant's counts of conviction. U.S.S.G. § 3D1.4. Importantly, while other counts or groups of counts may increase the combined offense level, the secondary "groups" must have an adjusted offense level within 8-levels of the adjusted offense level for the highest

13

group to negatively impact the overall calculation. U.S.S.G. § 3D1.4(c).

Here, Count 3 resulted in the highest adjusted offense level, and the adjusted offense level for Count 2 — even when calculated with the two enhancements that Petitioner disputes in his amended § 2255 motion — was not within 8 levels. The calculation for Count 2 was therefore "disregarded" under the Guidelines, meaning that Petitioner cannot demonstrate that any Count 2 enhancements were prejudicial to his advisory Guideline range or sentence. Accordingly, because Petitioner fails to demonstrate both Strickland prongs, his ineffective assistance claim is **DENIED.**

## D. Failure to Object to the Offense Level Calculations for Count 3

Petitioner's fourth ineffective assistance challenge asserts that defense counsel failed to object to: (1) his enhanced base offense level for Count 3, which required the possession of a semiautomatic firearm capable of accepting a large magazine; (2) a four-level enhancement based on the offense involving 8 to 24 firearms; and (3) a two-level enhancement based on the possession of a stolen firearm. ECF No. 111, at 15-17. Petitioner appears to argue that because Count 3 of the criminal information only charges him with possessing a single firearm — a Taurus Model TH9, 9mm semi-automatic pistol ("Taurus TH9") that was not stolen or

14

capable of accepting a large magazine — counsel was ineffective when she did not object to these three enhancements.   Id.

Petitioner's contention that a Guideline offense level may only be calculated based on the conduct contained in the charging document is incorrect as a matter of law.   When a district court is determining the applicable Guideline range, it may consider "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, [or] in preparation for that offense."   United States v. White, 875 F.2d 427, 433 (4th Cir. 1989) (quoting U.S.S.G. § 1B1.3).   In fact, this Court explained to Petitioner during his Rule 11 guilty plea colloquy the concept of "relevant conduct" under the Guidelines, and he affirmed under oath his understanding that his Guideline range would "be based in part on the actual conduct in which [he] engaged," which would "include all of [his] conduct, not just the minimum conduct necessary to establish the offense."   ECF No. 66, at 19-20.

Here, the Statement of Facts alone — to which Petitioner stipulated — identified eight firearms in addition to the Taurus TH9 that Petitioner purchased and/or was in possession of between April 2018 and March 2020.   ECF No. 37 ¶¶ 7, 9, 17, 22-23, 31, 37, 46.   Moreover, the PSR states that police officers recovered two additional firearms from Petitioner's room in a Virginia Beach

15

residence.  ECF No. 45 ¶ 11.  Petitioner's amended § 2255 motion
fails to acknowledge that these 10 firearms were also attributed
to him for purposes of calculating his Guideline range, see id.
¶ 43 (noting that Petitioner's offense involved 11 firearms), or
that the challenged enhancements are based on the characteristics
of these other guns, not the Taurus TH9.  Thus, Petitioner fails
to show that counsel's performance was constitutionally deficient
when she did not object to the firearm enhancements on the basis
that Petitioner was only charged with possession of the Taurus TH9
in his criminal information.  Petitioner also fails to demonstrate
Strickland  prejudice.       Accordingly,   Petitioner's   fourth
ineffective assistance claim is **DENIED**.

### E. Failure to Seek Dismissal of Count 3 or Continue the Criminal Proceedings

Petitioner's fifth and final ineffective assistance claim
asserts that counsel provided defective representation when she
failed to: (1) argue that 18 U.S.C. § 922(g)(3), the statute
charged in Count 3, violated the Second Amendment; or (2) request
a continuance of the criminal proceedings until the Supreme Court
decided New York State Rifle & Pistol Ass'n, Inc. v. Bruen.  ECF
No. 111, at 10 (citing New York State Rifle & Pistol Ass'n, Inc.
v. Bruen, 597 U.S. 1, 11 (2022)).  For context, in Bruen, a case
that was still pending at the time Petitioner was sentenced, the
question before the Supreme Court was whether a New York statute

16

regulating concealed carry permits was constitutional under the Second Amendment.   Bruen, 597 U.S. at 11.   The Court ultimately found that the statute violated the Second Amendment, and in doing so it adopted a new "text-and-history" framework to analyze Second Amendment challenges.   Id. at 24 (explaining that when "the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct" and the "government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation").

First, Petitioner's amended § 2255 motion appears to argue that defense counsel was ineffective for failing to move to dismiss the indictment in light of Bruen and a Fifth Circuit case (decided after Bruen) finding that § 922(g)(3) was unconstitutional as applied to a frequent marijuana user.   ECF No. 111, at 10 (citing United States v. Daniels, 77 F.4th 337, 340 (5th Cir. 2023), cert. granted, judgment vacated, 144 S. Ct. 2707, (2024)).   But as Petitioner readily concedes, both Bruen and Daniels were decided after his sentence became final, so counsel could not have used these cases to support a hypothetical motion to dismiss the superseding indictment or criminal information.   Moreover, at the time of Petitioner's sentencing, the Fourth Circuit had held in a published case that § 922(g)(3) was constitutional under the Second Amendment as applied to frequent marijuana users.   United States

17

v. Carter, 750 F.3d 462, 470 (4th Cir. 2014). Therefore, a defense motion challenging the constitutionality of § 922(g)(3) would have been contrary to binding law, and a "[f]ailure to raise a meritless argument can never amount to ineffective assistance." Moore v. United States, 934 F. Supp. 724, 731 (E.D. Va. 1996). Accordingly, Petitioner has not met his burden to demonstrate that counsel's performance was deficient when she did not challenge the constitutionality of § 922(g)(3).

In the alternative, Petitioner contends that defense counsel was constitutionally deficient for failing to move to stay the proceedings in this case until Bruen was decided. ECF No. 111, at 10. However, Petitioner does not explain how counsel's decision not to ask for a continuance — while waiting for the Supreme Court to decide a case that did not involve Petitioner's statute of conviction — amounted to constitutionally deficient legal representation. Further, while Bruen changed the framework for analyzing Second Amendment challenges, the Fourth Circuit has explained that "the case law is clear that an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law." Kornahrens v. Evatt, 66 F.3d 1350, 1360 (4th Cir. 1995) (emphasis added). Therefore, because Petitioner fails to demonstrate that counsel's "performance was so deficient that it fell below an objective standard of reasonableness," his final ineffective assistance claim is also **DENIED**.

### F. Direct Challenge to § 922(g)(3)

Petitioner's last ground for relief advances both "facial"
and "as applied" challenges to the constitutionality of
§ 922(g)(3), which makes unlawful the possession of a firearm by
a user of, or person addicted to, any controlled substance.  ECF
No. 111, at 18.  The Government correctly argues that this claim
is procedurally defaulted because Petitioner failed to raise it in
his original proceedings or litigate it on direct appeal.  ECF No.
116, at 7; Mikalajunas, 186 F.3d at 492-93.  To overcome such a
default, Petitioner must demonstrate both "cause" and "prejudice."[6]
United States v. Fugit, 703 F.3d 248, 253 (4th Cir. 2012)
(explaining that the burden to overcome procedural default rests
with the "person attacking his conviction").  The Government
concedes that because Petitioner's sentence became final before
Bruen was decided, Petitioner is able to demonstrate "cause" that
justifies raising these constitutional challenges for the first

---

[6] Alternatively, in an "extraordinary case," a petitioner can overcome his
procedural default by demonstrating that default would result in a
"fundamental miscarriage of justice," such as in the rare case "where a
constitutional violation has probably resulted in the conviction of one who
is actually innocent." United States v. Jones, 758 F.3d 579, 583 (4th Cir.
2014) (citations and quotation marks omitted). But Petitioner's amended
§ 2255 motion directly challenges the legal validity of his conviction and
sentence and does not in any way suggest that he is factually innocent of
the crimes of conviction. See Mikalajunas, 186 F.3d at 494 (explaining that
"to establish actual innocence a petitioner must demonstrate actual factual
innocence of the offense of conviction, i.e., that petitioner did not commit
the crime of which he was convicted" and clarifying that "this standard is
not satisfied by a showing that a petitioner is legally, but not factually,
innocent").   Accordingly, there is no suggestion that there was a
"fundamental miscarriage of justice" in this case based on Petitioner's
"actual innocence."

time on collateral review. ECF No. 116, at 7, n.5. The Government contends, however, that Petitioner cannot demonstrate "actual prejudice" because his Bruen claim is meritless. Id. at 7.

Similar to Petitioner's ineffective assistance claim involving § 922(g)(3), Petitioner's direct challenge to the constitutionality of § 922(g)(3) mainly relies on the Fifth Circuit's decision in Daniels, where the Fifth Circuit applied the Bruen test and found that § 922(g)(3) violated the Second Amendment as applied to a defendant who was a nonviolent marijuana user who was not a convicted felon. Daniels, 77 F.4th at 340. In response, the Government argues that: (1) Daniels was vacated by the Supreme Court for reconsideration; (2) all other circuits have held that § 922(g)(3) does not violate the Second Amendment; and (3) this nation's history and tradition supports a blanket ban on firearm possession by users or addicts of any controlled substance. ECF No. 116, at 7-22.[7]

It is true that Daniels, the only case that Petitioner cites in support of his direct challenge, was vacated by the Supreme Court. But earlier this year, the Fifth Circuit again found that § 922(g)(3) is unconstitutional as applied to defendants who are

---

[7] The Government also argues that Petitioner's conduct is not covered by the Second Amendment because he was not a "law-abiding responsible citizen" and that the Government may disarm him because he is "irresponsible." ECF No. 116, at 13-15. However, the Supreme Court has rejected the contention that an individual "may be disarmed simply because he is not 'responsible.'" United States v. Rahimi, 602 U.S. 680, 701 (2024).

disarmed based <u>only</u> on their status as habitual or occasional drug users. <u>United States v. Daniels</u>, 124 F.4th 967, 978-79 (5th Cir. 2025).[8]   Further, the only other two circuit courts that have applied the <u>Bruen</u> test to § 922(g)(3) have rejected the Government's argument that our history and tradition support a <u>categorical</u> disarmament of individuals based their status as "drug users" <u>without an individualized assessment</u> that they posed a physical danger to others. <u>See</u> <u>United States v. Cooper</u>, 127 F.4th 1092, 1096-97 (8th Cir. 2025) (explaining that: (1) "[n]othing in our tradition allows disarmament simply because [a defendant] belongs to a category of people, drug users, that Congress has categorically deemed dangerous;" and (2) historic laws restricting possession of firearms "had an individualized assessment built in"); <u>United States v. Harris</u>, 144 F.4th 154, 165-66 (3d Cir. 2025) (explaining that consistent with this nation's history "district courts must make individualized judgments and conclude that disarming a drug user is needed to address a risk that he would pose a physical danger to others").

Recognizing the developments in the law since Petitioner's amended § 2255 motion became ripe, the Court finds that the parties have not had an opportunity to fully and adequately address this issue.   Therefore, the Court will provide both Petitioner and the

---

[8] The 2025 <u>Daniels</u> court separately held that § 922(g)(3) is not facially unconstitutional under the Second Amendment. <u>Daniels</u>, 124 F.4th at 976.

Government an opportunity to file supplemental briefing addressing whether Petitioner has demonstrated prejudice in his procedurally defaulted challenge to the constitutionality of 18 U.S.C. § 922(g)(3). Accordingly, the Court will take this matter **UNDER ADVISEMENT.** At the evidentiary hearing, the parties will be invited to provide additional argument as to the prejudice prong of the procedural default test as well as to the merits of this claim.

### IV. CONCLUSION

For the reasons stated above, Petitioner's § 2255 claims are **DENIED** on the merits, with the exception of his ineffective assistance claim based on counsel's failure to file an appeal and his direct challenge to the constitutionality of 18 U.S.C § 922(g)(3), which are both **TAKEN UNDER ADVISEMENT** pending an evidentiary hearing. ECF No. 111. Further, Petitioner's original § 2255 motion, ECF No. 84, is **DISMISSED as moot.**

Because an evidentiary hearing is necessary, the Court **DIRECTS** the Clerk to appoint counsel to represent Petitioner at such hearing. See R. Governing § 2255 Proceedings in U.S. Dist. Cts. 8(c) ("If an evidentiary hearing is warranted, the judge <u>must appoint</u> an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A.") (emphasis added). As soon as new counsel is appointed, counsel for Petitioner and counsel for the Government shall: (1) confer regarding mutually

agreeable hearing dates and a jointly proposed briefing schedule[9]; and (2) contact the undersigned Judge's calendar clerk to schedule an evidentiary hearing.[10]  The hearing shall be conducted as soon as practicable, though counsel shall ensure that the hearing date affords the United States Marshals Service adequate time to transport Petitioner to this Court as Petitioner **will be required** to appear at the evidentiary hearing.

The Clerk is **REQUESTED** to forward a copy of this Opinion and Order to Petitioner, Petitioner's former counsel, the United States Attorney's Office in Norfolk, Virginia, and the United States Marshals Service.

**IT IS SO ORDERED.**

/s/ _____

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
August 20 , 2025

---

[9] If the parties do not reach an agreement, the Court will set a briefing schedule.

[10] Counsel may wish to consult with Petitioner's prior attorney regarding scheduling as she will presumably be a necessary witness at the evidentiary hearing.

23